UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

1ST RATE MORTGAGE CORP.,

    Plaintiff,

v.                                               Case No. 09-C-471

VISION MORTGAGE SERVICES CORP., et al.

    Defendants.

## ORDER ON MOTIONS IN LIMINE

Plaintiffs have filed a motion *in limine* seeking several forms of relief with respect to the trial scheduled to begin January 9, 2012. Primarily, they seek to bar testimony regarding business dealings and lawsuits they allege are unrelated to the matters at issue in this lawsuit. In particular, Plaintiff Thayse and Defendant Robokoff were involved in a number of real estate ventures, some of which resulted in foreclosures and the exercising of personal guarantees by banks against both men.

Thayse first asks that the Court bar testimony regarding the details of the failed real estate ventures. Robokoff argues that these deals and events demonstrate that Robokoff was forced to leave 1st Rate and never wanted to leave the mortgage business. As such, he would never have said that he would stay out of that business. Although such an argument might be relevant, that kind of information is not what the Plaintiffs have asked the Court to exclude. Plaintiffs concede that some aspects of these transactions are relevant because they implicate the central agreement at issue in this case. All they ask is that the underlying details about the real estate transactions be excluded

because they are irrelevant. Absent some compelling reason to conclude otherwise, I must conclude that such details are not relevant to the claims asserted here.

The next category of evidence Plaintiffs want to exclude is testimony relating to a real estate development called Richwill, LLC. Plaintiffs again assert that the deal has nothing to do with this case. Robokoff argues, however, that the aftermath of the deal, in which he negotiated a settlement of his liability with the lender, demonstrates that he had no malicious intent toward Thayse. It appears that the relevance of any details about these matters would be low, as it is unclear why any deal Robokoff might have worked out with a bank on an unrelated matter would preclude a finding that he had malicious intent with respect to the parties' own mortgage business. (Malicious intent being relevant to the claim for punitive damages.) As Plaintiffs note, if two parties have a number of different reasons for animus to exist between them, the removal of a single one of them will not diffuse the animosity on the others. And again, there is a real potential for juror confusion following testimony about unrelated business dealings. Accordingly, the motion will be granted with respect to this line of testimony as well.

A third kind of evidence the Plaintiffs seek to exclude involves information about the building that housed the 1st Rate company. The building was owned in a venture owned two-thirds by Thayse and one-third by Robokoff. Robokoff alleges that he sold the building through the buyout agreement at a time when Thayse knew there was a pending offer to purchase it from a third party. As such, Robokoff was denied the opportunity to realize the profits he would have enjoyed had he held out and participated in the eventual sale. Robokoff asserts that these circumstances show that Thayse committed fraud, which means that the stock purchase agreement is void for lack of consideration.

2

Even if true, the sequence of facts alleged by Robokoff does not suggest there was a failure of consideration. By his own admission, Robokoff enjoyed *some* profit on the sale, and he also obtained other benefits for participating in the stock purchase agreement. Even if there was some kind of fraud with respect to the sale of the building, that does not mean the sale went forth under an agreement that was not supported by consideration. Without a better reason than the ones proposed, informing jurors about a venture that owned an office building would be needlessly confusing and would have very little, if any, relevance.

Plaintiffs also seek to bar testimony about other litigation that 1st Rate conducted or failed to conduct. Robokoff argues that 1st Rate often failed to pursue litigation even when it had grounds to do so, and this fact demonstrates that its decision to pursue *this* case is arbitrary or part of some scheme to be anti-competitive. But arbitrariness of business motives is not a question a jury should be asked to consider. Robokoff suggests that these other matters could demonstrate that Plaintiffs are pursuing some kind of illegal strategy to "harm and crush competitors," but I have not seen enough of a basis for such an assertion to be able to deem that angle a relevant aspect of this case. The case will rise or fall on whether the Plaintiffs' contractual rights were breached, and matters, including settlement discussions, relating to disputes Plaintiffs may or may not have pursued with other parties are not relevant.

Defendants have also filed their own motion *in limine* seeking to exclude evidence that Defendant Skaleski was denied unemployment benefits by the state based on the Department of Workforce Development's determination that she was fired for cause. Although the specific findings of the administrative agency are not before me, Plaintiffs contend that Skaleski was found to have engaged in misconduct, namely stealing the company's information. (Pl.'s Reply, doc. 95,

at 7.) This is directly relevant, Plaintiffs argue, (1) because Vision and Robokoff are alleged to have encouraged and conspired with Skaleski to misappropriate the information, and (2) because the agency's findings directly contradict Skaleski's contention that the information was not 1st Rate's and was free for her to take. Plaintiffs also contend that the defendants' fears that the jury will place too much weight on the agency's determination can be addressed in instructions. Finally, they note that Skaleski herself, who is *pro se*, has not made a motion seeking to exclude this evidence.

State administrative agency decisions, even when unreviewed by state courts, are not just admissible, but are often accorded preclusive effect in other proceedings. *See Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise"); *Harper v. Godfrey Co.*, 45 F.3d 143, 149 (7th Cir. 1995) (decision of Wisconsin Unemployment Compensation Division precludes relitigation of damages claim, even though no Wisconsin court reviewed the state administrative decision); *Stancil v. Moo & Oink, Inc.*, No. 95-2342, 1996 WL 30801, *2 (7th Cir.) ("Ordinarily, the policies of preclusion, often called administrative estoppel, prevent relitigation in federal court of an adjudicatory decision reached by a state agency.") (unpublished). In order for the rule to apply, however, the issue in the subsequent proceeding must be identical to the issue raised in the subsequent action.

Assuming Plaintiffs' claim for conversion remains in the case, the UC determination may well preclude Skaleski from arguing that she did not convert 1st Rate's property. But it is questionable whether the conversion claim should remain. If the only property Skaleski is alleged to have misappropriated is intellectual property, such as trade secrets, the claim will likely be dismissed. Although the conversion claim survived a motion for summary judgment, the

4

conversion claim in Count VII of the Complaint was only cursorily addressed. I noted that there was some support for Plaintiffs' claim under Illinois law, but it is Wisconsin law that controls here. Under Wisconsin law, [c]onversion is unprivileged interference with the owner's possession and enjoyment of a chattel." *Kerrigan v. American Orthodontics Corp.*, 960 F.2d 43, 45 (7th Cir. 1992); *see also Production Credit Ass'n of Chippewa Falls v. Equity Coop Livestock Sales Ass'*, 82 Wis.2d 5, 10, 261 N.W.2d 127, 129 (1978) ("An action for conversion is bottomed upon a tortious interference with possessory rights."). Unless Plaintiff has some evidence that Skaleski misappropriated the physical property of 1st Rate, its conversion claim may be dismissed. In that event, the UC determination likely would not be admitted, since the UC determination is not relevant to the issue of whether the customer information that Skaleski allegedly misappropriated constitutes a trade secret. While her misappropriation of such information may have been good cause for termination of her employment, the question of whether it would subject her to tort damages for theft of trade secrets is clearly distinct.

Accordingly, I reserve ruling on the admissibility of the UC determination at this time. The parties should be prepared to address it further on the morning of trial. If either party wishes to provide additional authority on the issue, they should do so on or before January 5, 2012.

In sum, the Plaintiffs' motions *in limine* are **GRANTED**. I reserve ruling on the Defendants' motion. The parties should be mindful that determinations at this stage are preliminary rulings that may be altered or revisited based on the evidence that emerges at trial.

**SO ORDERED** this   20th   day of December, 2011.

     s/ William C. Griesbach
     William C. Griesbach
     United States District Judge